FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 1 3 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– against –<br><br>WILLIAM HOPKINS JR.<br><br>Defendant. | Statement of Reasons Pursuant to 18 U.S.C. § 3553(2)<br><br>17-CR-278<br>17-CR-293 |

JACK B. WEINSTEIN, Senior United States District Judge:

**Parties**                              **Appearances**

The United States of America

                                             Kaitlin Farrell
                                             Turner Buford
                                             United States Attorney's Office
                                             271 Cadman Plaza East
                                             Brooklyn, NY 11201

William Hopkins

                                             Michelle Gelernt
                                             Federal Defenders
                                             One Pierrepont Plaza
                                             Brooklyn, NY 11201

Table of Contents
I. Introduction ........................................................................................................... 2
II. Facts ...................................................................................................................... 3
    a. Food Stamp Fraud ........................................................................................... 3
    b. Mail Theft ......................................................................................................... 4
    c. Guilty Plea ........................................................................................................ 4
    d. Victim's Statement ........................................................................................... 4
    e. Sentencing ........................................................................................................ 5
III. Offense Level, Category, and Sentencing Guidelines Range ............................. 5
IV. Law ....................................................................................................................... 6
V. 18 U.S.C. § 3553(a) Considerations .................................................................... 7
VI. Conclusion ........................................................................................................... 8

I. Introduction

William Hopkins, Jr. pled guilty to food stamp fraud and to mail theft at an airport. In effect, he stole from the poor and the well-to-do to pay for his own pleasures.

He is 42 years old. He has no prior criminal conviction and has consistently held lawful employment and tried to support his offspring. Society and Hopkins are better off if he is kept out of prison so he can earn a living, pay restitution and help support his children with money and emotional support. *See, e.g.,* Deborah Pines, *Judge Rejects Guidelines in Fraud Sentencing*, NYLJ, Jul. 1, 1992 ("Sentences ranged from probation to [various terms of] imprisonment for the defendants who are mainly single mothers from the Dominican Republic who bought, sold and used false identity documents to obtain government funds."). The heavy community service requirement substitutes for incarceration, serving the public rather than burdening the taxpayer. *See, e.g.,* Colby Hamilton, *Berman Defends 'Reasonableness' of Community Service Sentence*, NYLJ, Mar. 26, 2018; *see also* U.S.C. § 5F1.3 cmt. n. 1 ("Community service generally should not be imposed in excess of 400 hours.").

The minimum guideline for incarceration is eighteen months. Hopkins is sentenced concurrently to four years' probation and three hundred hours of community service. He will pay restitution in the amount of $59,022.24 for food stamp fraud and $13,178 for stolen mail at the rate of %10 of his net earnings. This punishment seems just. *See, e.g., Gall v. United States*, 552 U.S. 38, 48-49 (2007); *United States v. Dennison*, 493 F. Supp. 2d 139, 140 (D. Me. 2007) (giving special weight to "Congress's evident desire for restitution through working" in place of incarceration); 7 U.S.C. § 2024(b)(2)("[T]he court may permit [a defendant] to perform work approved by the court for the purpose of providing restitution for losses incurred . . . as a result of the [food stamp fraud]. If the court permits such individual to perform such work and such individual agrees thereto, the court shall withhold the imposition of the sentence on the condition that such individual perform the assigned work. Upon the successful completion of the assigned work the court may suspend such sentence."). The court does not withhold imposition of Hopkins' sentence, but takes into account Congressional preference for community work.

II. Facts

William Hopkins, Jr. ("Hopkins") was a custodian at a United States Post Office ("USPS") service center at John F. Kennedy International Airport ("JFK"). Pre-Sentence Report ("PSR") ¶ 9. At the time, his girlfriend and co-defendant, Mahalia Abraham ("Abraham"), worked for the New York City Human Resources Administration. PSR ¶ 8.

a. Food Stamp Fraud

As part of her employment, Abraham had access to names, dates of birth, social security numbers, and electronic benefits transfer ("EBT") card information of Supplemental Nutrition Assistance Program ("SNAP") recipients. *Id.*

Between July 2014 and April 2016 Abraham provided the information of over 130 SNAP recipients to Hopkins. PSR ¶ 11. Hopkins fraudulently used this information to make purchases and withdraw cash, often delaying the intended beneficiaries from gaining access to food or other essentials. PSR ¶ 12. Abraham and Hopkins stole a combined $59,022.24 in food stamp benefits. PSR ¶ 13.

### b. Mail Theft

The Office of Inspector General ("OIG") began an investigation of the USPS service center at JFK after numerous reports of stolen or unaccounted for mail. PSR ¶ 16.

On March 2, 2017, agents from the OIG observed the mail room from behind a one-way mirror. PSR ¶ 18. They watched as Hopkins removed a package from a mail hamper and placed it into a mobile garbage bin. *Id.* Hopkins pushed the bin outside of the mail room where he was confronted by agents who searched the bin and recovered the package. PSR ¶ 19. It had been opened and a cell phone removed. *Id.* After a search of Hopkins person, agents recovered the phone inside his right pant leg. PSR ¶ 20. Hopkins car contained stolen items including six cell phones and an iPad. PSR ¶ 21. He had stolen a total of $13,178 worth of goods from 17 victims. PSR ¶ 22.

### c. Guilty Plea

Hopkins pled guilty on September 20, 2017, to SNAP benefits fraud, 7 U.S.C. § 2024(b), and theft of mail by a postal service employee, 18 U.S.C. § 1709.

### d. Victim's Statement

At the hearing for the guilty plea, one victim testified to the hardship that he suffered as a result of Hopkins benefits fraud:

> I would just like to express my displeasure at the situation because it really put me at a hardship. My doctors had deemed me disabled. You see I walk with a cane

4

and everything . . . I take 15 medications . . . I had to go hungry for like three to four days without eating any food . . . this was a very deplorable act . . . I don't even know how to express how sad and upset I am that I have to literally—that I'm sick already and I have to go to bed hungry due to somebody doing something that harms me. And I just don't think that it's fair.

Hr'g Tr. 36:23-38:11, Sept. 20, 2017.

    e. Sentencing

The court held a sentencing hearing on March 20, 2018. Mr. Hopkins' father and uncle were present to support him.

The proceeding was videotaped. *In Re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) ("The sentencing hearing normally requires that the defendant be observed for credibility, mental astuteness, physical characteristics, ability to withstand the rigors and dangers of incarceration, and a myriad other relevant factors. In many instances, it is necessary to observe the employer's and familial ties to the defendant. A judge applies mental impressions of many tangible and intangible factors when imposing a sentence.").

III.    Offense Level, Category, and Sentencing Guidelines Range

The base offense level for food stamp fraud, 7 U.S.C. § 2024(b), is seven. PSR ¶ 32. A six level enhancement was added because the loss exceeded $40,000. PSR ¶ 33. Two levels were added because the offense involved an identification authentication feature. PSR ¶ 34. Two levels were added because Hopkins was the leader of the criminal activity. PSR ¶ 36. The offense level was reduced a total of three points for acceptance of responsibility and timely notification of a guilty plea. PSR ¶¶ 50, 51.

The base offense level for mail theft by a postal employee, 18 U.S.C. § 1709, is 6. PSR ¶ 39. Two levels are added because the loss was greater than $6,500. PSR ¶ 40. Two levels are added because the offense involved 10 or more victims. PSR ¶ 41.

5

A multiple count adjustment of 1.5 units, or one offense level, is added to the greater of the adjusted offense levels. PSR ¶¶ 45,46; *see* 18 U.S.C. § 3D1.4.

The total adjusted offense level for food stamp fraud, the higher of the two offense levels, is 15. PSR ¶ 52. Hopkins has no prior criminal convictions and therefore has a criminal history category of I. PSR ¶ 55.

The imprisonment range under the guidelines for food stamp fraud is 18-24 months. PSR ¶ 91.

IV. Law

The United States Sentencing Guidelines are "now advisory, rather than binding." *Rita v. United States*, 551 U.S. 338, 361 (2007) (Stevens, J., concurring); *see also United States v. Concepcion*, 795 F. Supp. 1262, 1277–78 (E.D.N.Y. 1992) ("[I]t must be kept in mind that, for the entire history of federal sentencing prior to the 1984 Act, judges exercised broad discretion in sentencing. The cautious, pluralistic language of sections 3551 and 3553 does not indicate a one hundred and eighty degree turn in sentencing practice.").

A district court shall state its reasons for "imposition of the particular sentence." *U.S. v. Booker*, 543 U.S. 220 (2005).

Title 18 U.S.C. § 3553(a) instructs a court to impose a sentence "sufficient, but not greater than necessary." A sentencing court shall take into account the following factors: (1) the nature of the offense and history of the defendant; (2) the need for just punishment; (3) general and specific deterrence; (4) incapacitation; (5) rehabilitation of the defendant; and (6) available sentences. *See* 18 U.S.C. § 3553(a).

The Sentencing Reform Act of 1984 encourages non-incarceratory sentences for first-time offenders unless the conviction is of crimes that are violent or "serious." 18 U.S.C. § 994(j)

("The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense."). When compared to violent crimes many fraud offenses are not "serious" enough to warrant incarceration.

V.     18 U.S.C. § 3553(a) Considerations

The relevant sentencing considerations warrant a downward departure.

Hopkins is currently 42 years old with no past criminal conduct. *See* Defendant's Sentencing Memorandum, at 3 ("Def.s' Mem."). He has eight children, six are minors. *Id.* He pays child support for one of the children and attempts to care for and financially support the others. *See United States v. Bannister*, 786 F. Supp. 2d 617, 653 ("Incarceration affects the lives not only of prisoners but of those around them. Families of prisoners face higher rates of divorce, separation, domestic violence, and developmental and behavioral problems among children than the families of non-prisoners.").

He has continuously maintained employment during his adult life. This conviction will create future obstacles for work. Any incarceratory sentence would further decrease his chance for gainful employment. *See, e.g., Id.* at 661 ("Employers are often reluctant to employ released prisoners.").

Because of his age and lack of criminal history, Hopkins presents a low risk for recidivism. A heavy jail sentence might increase the risk of re-offending. *United States v. Rivera*, 281 F. Supp. 3d 269, 282 (E.D.N.Y. 2017) ("Studies show that recidivism rates increase with lengthier prison sentences."). Restitution, probation, community service, and the lasting effect of a criminal conviction are punishment enough. *United States v. Zimmerman*, No. 10-

CR-598 JG, 2012 WL 3779387, at *6 (E.D.N.Y. June 19, 2012) ("Imprisonment is not the only way we punish.").

VI. Conclusion

All relevant issues under the guidelines have been considered; with special attention given to factors listed under 18 U.S.C. 3553(a) to ensure a sufficient, but "not greater than necessary" sentence.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 27, 2018
Brooklyn, New York

8